## BROADMEYER v. LINDBLADH.

Patent Appeal No. 2627.
Court of Customs and Patent Appeals.
Feb. 25, 1931.

B. G. Foster, of Washington, D. C., for appellant.

Harrison F. Lyman, of Boston, Mass., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals affirming the decision of the Examiner of Interferences awarding priority of invention to appellee, Harmon E. Lindbladh.

The invention relates to a duplex ruling machine, a machine for ruling lines on paper. It consists, generally speaking, of a combination of two single ruling machines so constructed that sheets of paper are caused to pass through both sections of the duplex machine; the first section ruling lines in one direction, and the other section ruling lines at angles, usually right angles, to the lines ruled by the first section. The counts in issue describe the invention. They read:

"1. In a duplex ruling machine, a plurality of sets of ruling devices, means for delivering sheets to the sets of devices successively so that the lines produced by one set will extend in a different direction on said sheets from those produced by another set, and means for moving particular ruling devices of a set into and out of contact with the sheets so that the lines produced thereby will terminate in predetermined relation to their points of intersection with the lines produced by another set.

"2. In a duplex ruling machine, a plurality of ruling devices arranged to produce intersecting lines, means for moving a ruling device into and out of contact with the work at points definitely located with respect to an intersecting line produced by a previously-acting ruling device, means for presenting the work to the ruling devices, and means arranged to vary the rate at which the work is acted upon by the ruling devices.

"3. In a ruling machine, a plurality of sets of ruling devices successively acting upon the sheets to be ruled, means for feeding the sheets to one set of ruling devices, means by which the ruled sheets are received and are fed to another set of ruling devices, sheet-controlling means associated with each feeding means and corresponding set of ruling devices, means arranged to vary the rate of one feeding means, and means arranged to vary the rate at which a sheet-controlling means acts.

"4. In a duplex ruling machine, a plurality of pens arranged to consecutively produce intersecting lines, lifting means for the pens, means arranged to actuate the lifting means of a pen to cause it to strike in definite relation to the line produced by the previously-acting pen, and means arranged to change the rate at which the sheets are acted upon by the pens.

"5. In apparatus of the character set forth, the combination with two ruling machines, each having sheet-controlling means, a pen beam, pen beam operating means, and a sheet conveyor, of means for driving the pen beam operating mechanisms in synchronism and the conveyor at different relative speeds, and means for delivering the ruled sheets from one machine to the other."

Appellant's application was filed on January 18, 1923.

Appellee's application was filed September 17, 1921.

Appellee submitted no testimony, and accordingly is restricted to his filing date for conception and reduction to practice.

Appellant, the junior party, submitted testimony for the purpose of establishing conception and reduction to practice prior to appellee's filing date.

382

Appellant testified that he was supervising engineer of the Hickok Manufacturing Company, his assignee; that he conceived the involved invention in November, 1916; that, at that time, he disclosed the invention to the foreman of a customer of the Hickok Manufacturing Company, whose name he could not recall; that some time in 1917 he mentioned the matter to Mr. Ross A. Hickok, secretary of the Hickok Manufacturing Company; that in October, 1917, he prepared a drawing marked "driving plan for Hickok quadruple 'L' ruling machine," at the bottom of which is written in lead pencil the following: "Drive through pin cylinder shafts for striking"; that he offered this drawing, Exhibit 4, and particularly the pencil notation thereon, as proof that he had the invention in mind as early as October, 1917; that nothing more was done about the matter until November, 1921, at which time appellant's assignee received an order for a machine from a dealer in St. Louis, Mo.; and that in January, 1922, this order was filled by the construction and delivery of a machine embodying the involved invention. He also testified that the allegations in his preliminary statement to the effect that he had completed a machine embodying the invention in 1918 were incorrect, and that he did not know that he had misstated the facts until some time during the year 1927. When asked whey he did not file an application for a patent in 1917 or 1918, he replied: "I did not consider it a patent striking on both halves of the machine as this had been done on double deck machines for years." Thereupon he was requested to explain why, if he deemed the machine he claims to have conceived in 1916 unpatentable, he filed, in 1923, the application involved in the interference. To this question, he replied: "It is quite an improvement of driving from the pen cylinder shaft, that is having a source of power on a corner of a 'L' machine driving the pen cylinder shafts as more accuracy is obtained to this drive then if the drive were as formerly from the cloth roller to the pen cylinder shaft."

The witness Ross A. Hickok testified that appellant disclosed the involved invention to him in 1917; that, as his company did not receive an order for a machine of the type involved prior to November 1, 1921, the invention was not reduced to practice until that order was filled by the construction and shipment, February 14, 1922, of a machine embodying the invention. The witness further testified that he saw appellee's machine embodying the invention in July, 1921, at the Graphic Arts Exposition, Chicago, Ill.

The witness William O. Hickok, III, testified that appellant disclosed the invention to him on or about July 6, 1918; that his brother, the witness Ross A. Hickok, shortly after his return from the Graphic Arts Exposition in Chicago, told him of having seen appellee's machine; and that, pursuant to an order received November 1, 1921, his company constructed a machine embodying the invention, and, on February 14, 1922, shipped it to a dealer in St. Louis, Mo.

Upon this record the Examiner of Interferences held that the testimony of appellant, both as to conception and reduction to practice of the invention, was "very scanty." However, he held that appellant had conceived the invention set out in counts 1 and 5 prior to appellee's filing date, but that, as he was not diligent in reducing the invention to practice until long after September 17, 1921, appellee's filing date, he was not entitled to an award of priority, as to these counts; that appellant had failed to establish conception of the invention as set out in counts 2, 3, and 4 prior to appellee's filing date; and that appellee was entitled to an award of priority as to those counts.

The Board of Appeals held that appellant had failed to establish conception of the invention set out in the involved counts prior to appellee's filing date, and, in this connection, said:

"On Broadmeyer's sketch exhibit No. 4 dated October 1917 is found a pencil note 'drive through pen cyl. shaft for striking.' This is not believed to establish any definite disclosure or proof of conception since the machine of that sketch might still have included the belt drive shown but merely connected to the pen cylinder instead of the apron roller and the belts were the source of trouble in striking on the second section. We are unable to find that Broadmeyer has proven either conception or reduction to practice before Lindbladh's filing date."

Counsel for appellant has argued in this court the question of the patentability of the counts in issue. This question will not be considered by the court in an interference proceeding. Gowen v. Hendry et al., 37 F. (2d) 426, 17 C. C. P. A. 789; Brogden v. Slater, 40 F.(2d) 988, 17 C. C. P. A. 1240.

The evidence submitted by appellant to establish that he conceived the invention prior to appellee's filing date, September 17, 1921, is not very satisfactory. Appellant filed an amended preliminary statement alleging that he reduced the invention to practice in 1918 by the construction of a machine embodying

the invention for the High Art Ruling Company, of St. Louis, Mo. On his direct examination he testified that this statement was incorrect and that the machine referred to did not embody the invention. Furthermore, he testified that he did not file an application for a patent in 1917 or 1918 because he did not consider patentable the machine he now claims he then conceived and disclosed. This statement, considered in connection with his testimony explaining why, in 1923, he filed the application involved in this interference, tends to support the contentions of counsel for appellee that appellant did not conceive the involved invention until after appellee's filing date. Another circumstance of some significance is that the officers of appellant's assignee, the only witnesses who attempted to corroborate appellant's testimony, were aware of the construction of appellee's machine in July, 1921. Nevertheless, nothing was done by appellant until after November 1, 1921, and his application was not filed until January, 1923. In view of these facts, how can it be seriously contended that appellant is entitled to an award of priority?

We are of opinion that the Board of Appeals was right in holding that appellant did not conceive the invention prior to appellee's filing date, and that therefore appellee was entitled to an award of priority.

The decision is affirmed.

Affirmed.